IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA JONES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 24-0245-WS-M |
| | ) |
| IDABAMA, LLC, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 49). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 51-52, 55-56),[1] and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the complaint, (Doc. 1-2), the plaintiff was employed as a home health nurse for a client who, in early September 2022, rented a vacation rental property owned by the defendant. An outdoor patio step was not clearly marked and was difficult to see, causing the plaintiff to fall and experience various injuries. The complaint sets forth claims for negligence and wantonness.

The defendant argues: (1) that the step did not present a dangerous condition; (2) that the defendant provided sufficient warning; (3) that the defendant had no duty to warn; and (4) that the plaintiff was contributorily negligent. The defendant seeks summary judgment as to both claims against it.

---

[1] The defendant's motion to seal one exhibit, (Doc. 50), is **denied**. The document at issue patently does not, as the defendant maintains without explanation, "referenc[e] confidential and proprietary information" about the operations of the defendant's property manager.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id.* "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id.*; accord *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); accord *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; accord *Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608. "If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."

2

*Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the [non-movant's] version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the [movants] and not in tension with the [non-movant's] version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). Moreover, "a passing reference to an issue in a brief [i]s insufficient to properly raise that issue." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005). The Court accordingly limits its review to those arguments the parties have expressly and adequately advanced.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to *particular parts* of materials in the record," and "[t]he Court need consider only the cited materials …." Fed. R. Civ. P. 56(c)(1)(A), (c)(3) (emphasis added). By local rule, "[t]he movant must file a brief that includes … all facts relied upon, each supported by a *specific, pinpoint citation* to the record …." Civil Local Rule 56(a)(1) (emphasis added), and the Court need not consider factual assertions unsupported by such pinpoint citations. *Jones v. Unity Behavioral Health, LLC*, 2021 WL 5495578 at *1, *4 (11th Cir. 2021). As this Court has noted, "[t]he Court will not

scour an entire deposition transcript to seek out evidentiary support for defendant's statement." *Ivy Marine Consulting, LLC v. Monarch Energy Partners, Inc.*, 2019 WL 1173356 at *4 (S.D. Ala. 2019); *accord Foster v. Bridgestone Americas Tire Operations, LLC*, 2013 WL 1363962 at *5 n.12 (S.D. Ala. 2013).

## I. Summary of the Evidence.

The relevant evidence, properly viewed in the light most favorable to the plaintiff, is as follows:

The defendant's property is a detached waterfront dwelling in Gulf Shores, Alabama. The ground level is paved for parking, with two floors of interior space above. The rear of the structure faces the Gulf (south). A deck stretches across the entire rear and can be accessed from an exterior flight of stairs extending eastward from the ground to the western edge of the deck. Immediately north of the deck is interior space (the western half) and a covered porch (the eastern half). The eastern half of the interior space can be accessed through a glass door opening onto the covered porch.

The plaintiff had never before been to the property and had never before been on the rear deck or the covered porch. She ascended the rear exterior stairs with the intention of entering the house through the glass door, which required her to turn left upon passing the interior space adjoining the western half of the deck. As she did so and approached the covered porch, she fell.

The floor of the porch is approximately 7-3/8" higher than the floor of the adjoining deck. Both surfaces use the same composite deck planks -- same width, same color, same grain, laid in the same east-west pattern. In several submitted photographs taken from the porch, the transition from porch to deck appears to be invisible. The riser likewise is composed of the same composite deck planks, of the same color and grain and approximately the same width, also running east to west.

Above the covered porch is the upper level of interior living space. The rear of this space is supported by two columns, footed on the porch about one inch from the riser. The western column is about three feet east of the wall enclosing the western

4

interior space; the eastern column is eight to ten feet to the east of the western column, at the eastern edge of the structure.  At the time of the subject incident, a metal table and six metal chairs occupied the porch between the columns, leaving the three-foot gap as the shortest, best, and perhaps only transit area from deck to porch.

At the time of the subject incident, there was a small, rectangular strip of white marking on the floor of the porch at the riser, halfway between the western column and the western interior space, running about 15-20% of the distance between the column and the wall.  Two similar strips were placed similarly between the columns, each running about 5% of the distance between the columns.

At the time of the subject incident, there was a small, rectangular sign on the north side of the western column, five or six feet above the floor.  With some effort, the sign as depicted in the defendant's photographs can be deciphered as reading, "CAUTION STEP DOWN."  The lettering is black on a white background and is affixed to a column painted what appears to be a pleasant but pale yellow, resulting in what may charitably be called a modest contrast.  An identical sign is similarly affixed to the western face of the eastern column.

The plaintiff was following her general practice of looking where she was going as she walked.  She was not engaged in conversation with anyone, and she was proceeding at a normal pace.  She fell because she tripped over the riser, and she tripped over the riser because she did not see it.  Nor did she see the signs or the white marking.  What caused her fall was that "[e]verything is the same color.  I just -- it just looked like one flat landing."  (Doc. 55-1 at 14).

The defendant acquired the property in May 2022.  The defendant's property management firm ("Harris") conducted an onboarding inspection and a pre-arrival inspection of the property, both on May 28, 2022, during which no issue regarding the deck or porch was noted.  Harris's CEO is unaware of any person other than the plaintiff falling on the deck or porch or of any complaint or notice regarding difficulty seeing the step.

**II. Analysis.**

The parties agree that this case is governed by Alabama premises liability principles and that, for such purposes, the plaintiff is to be categorized as an invitee. (Doc. 52 at 11-12; Doc. 55 at 10). They further agree that the defendant's duty to the plaintiff was "to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises are in a dangerous condition, to give sufficient warning so that, by the use of ordinary care, the danger can be avoided." *South Alabama Brick Co. v. Carwie*, 214 So. 3d 1169, 1176 (Ala. 2016) (emphasis omitted).

### A. Did the Step Constitute a Dangerous Condition?

Relying on the report of its expert, the defendant argues there was no dangerous condition because the step complied with the governing building code and because the deck/porch area provided physical and visual cues. (Doc. 52 at 13-14). As to the building code, the expert notes only that the riser was a permissible height and that, because there were fewer than three risers, no handrail was required. All well and good, but neither feature is at issue in this lawsuit; the question is the riser's visibility, not its dimensions or accoutrements.

As to visibility, the expert notes that the riser is "located between two distinct architectural elements/features on the rear of the residence, the covered porch and the rear deck. The design/configuration of the aforementioned architectural elements provided both physical and visual cues separating the distinct spaces." (Doc. 49-7 at 3). The expert's opinion again misses the point; the question is not whether an approaching invitee would be aware she was transitioning from an open deck to a covered porch, but whether she would be aware the porch was a step higher than the deck.

The expert also opines that "there was sufficient contrast, shadow, and change in elevation, specifically noting the height of the furniture located immediately adjacent to the riser on the lower landing, to adequately detect the subject riser." (Doc. 49-7 at 4). Because the defendant in its briefing does not reference or rely on this material, the Court need not address it. Nevertheless, the Court notes that the photographic evidence does

not indicate appreciable shadow or contrast between the riser and the adjoining flooring. Nor does any offered evidence support the proposition that an invitee traveling as did the plaintiff would, or even might, notice furniture not in her line of travel (which would have to be avoided), much less assign significance to its height.[2]

The defendant relies on the small white marking in the plaintiff's line of travel to support its position that the step was not a dangerous condition. Assuming without deciding that this feature should be considered as part of the condition rather than as part of the warning about the condition, it does not eliminate any genuine dispute as to whether the step presented a dangerous condition. As noted, the strip is short (running a small fraction of the step's length) and white (not yellow), and without prior explanation of its purpose could easily be taken by a pedestrian for a random scrap of paper like the one shown near it in Plaintiff's Exhibit C-3. (Doc. 55-3 at 3). To the uncertain extent the defendant suggests that the presence of three such strips along the perhaps twelve-foot run of the step would signal their purpose as "indicators," (Doc. 52 at 14), the defendant fails to explain why the plaintiff should be expected to look at the ground six to ten feet "to her right" to detect these strips, (*id*.); nor does the defendant attempt to show that the many items of deck and porch furniture depicted in the photographs would not have blocked the strips from the plaintiff's view.

The expert concludes that "[t]he subject riser and the area of the incident were not imminently dangerous." (Doc. 49-7 at 3). The defendant notes that the plaintiff has presented no countering expert testimony, (Doc. 56 at 6), but it cites no law for the unlikely proposition that she must present such evidence in order to avoid summary judgment. The Court therefore must assume that a properly functioning jury in this case would have its usual authority to reject an expert opinion it deems inconsistent with its own reasonable assessment based on the evidence. *E.g., Gregg v. U.S. Industries, Inc.*,

---

[2] Furniture comes in so many differing shapes and heights, it is difficult to imagine even a scrupulous observer in transit instantly deducing an approaching elevation change simply from the fact that a dining table and chairs on the porch appear modestly higher than a chaise lounge on the deck.

887 F.2d 1462, 1470 (11th Cir. 1989) ("Even uncontradicted expert opinion testimony is not conclusive, and the jury has every right not to accept it.").

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff, a properly functioning jury could find that the step constituted a dangerous condition.

### B.  Did the Defendant Give Sufficient Warning?

The white strips and the design and configuration of the deck, porch, and furniture have been addressed in Part II.A.  The only other arguable warnings identified by the defendant are the two "CAUTION STEP DOWN" signs.  The general inconspicuousness of these signs has been noted, but in the plaintiff's case they were essentially invisible.  As the defendant grudgingly concedes, (Doc. 52 at 14), one sign was on the north side of the column, which completely blocked her view of it.  The defendant insists that the other sign offered sufficient warning, but it cannot explain how a tiny sign, on the far eastern column twelve to fifteen feet away and "to her right" rather than in her line of travel, (*id.*), could possibly meet that standard.

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff, a properly functioning jury could find that the defendant did not give sufficient warning of the step.

### C.  Did the Defendant Have a Duty to Warn?

"The owner of premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part." *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009) (internal quotes omitted).  "[A] premises owner's duty to warn extends only to hidden defects and dangers that are known to [the premises owner], but that are unknown or hidden to the invitee." *Carwie*, 214 So. 3d at 1176 (internal quotes omitted).  "The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries[, and] [i]f that superior knowledge is lacking,

as when the danger is obvious, the invitor cannot be held liable." *Heath v. Sims Brothers Construction Co.*, 529 So. 2d 994, 995 (Ala. 1988). The defendant argues that it had no knowledge of the dangerous condition and that the plaintiff either had such knowledge or would have had such knowledge had she exercised reasonable care, because it was open and obvious. (Doc. 52 at 2, 17-18).

The defendant patently knew of the step's existence, and it does not argue otherwise. Instead, the defendant suggests it did not know the step posed a danger, on the grounds that its agent's May 2022 inspections did not mention it and because there have been no other incidents, and no complaints or notices regarding the step, in the three-plus years it has owned the property. (Doc. 52 at 18; Doc. 56 at 7-8). The defendant does not explain how the property's post-incident history is relevant to its knowledge as of the date of the incident. Nor does the defendant explain how that post-incident history could suggest non-dangerousness at the time of the incident, since its own evidence is that its agent "place[d] bright caution tape around the base and top of the step" immediately following the incident, (Doc. 51; Doc. 49-4 at 2), which tape provides the large surface area, the vivid color contrast, and the recognized connotation of danger that the short white strips did not. (Doc. 55-3 at 7-8). And because the defendant offers no evidence regarding use of the property in the three months between May 28 and September 7, 2022, even the property's pre-incident history fails to support its position.

The defendant concedes that, where a plaintiff makes a prima facie showing that a defect in the premises caused her injury, the issue of the defendant's notice of the defect automatically is for the jury. (Doc. 56 at 3). To avoid this rule, the defendant makes the remarkable suggestion that the plaintiff offers nothing but "speculation" that the condition of the step caused her injury. (Doc. 52 at 14-15; Doc. 56 at 2, 6). This is plainly incorrect: the plaintiff testified that her injury was caused by her tripping on the step (the premises) and that her tripping was caused by the obscurity of the step (a defect in the premises). The defendant is free to challenge the plaintiff's rendition of the facts, but her statement of how the incident occurred is facially based on her personal

9

knowledge of the incident, and the obscurity of the step is corroborated by the photographic evidence, including the defendant's.

The defendant's final thrust is that the presence of the step was open and obvious. (Doc. 52 at 15-18). The defendant's expert did not so opine, but its management agent did so testify. (*Id*. at 17). Other evidence addressed above, however, including the photographic evidence, plainly would permit a properly functioning jury to disagree. The defendant would do well to bear in mind that the question is whether the plaintiff, in the exercise of reasonable care, should have discovered the step in the brief interval of time before she encountered it, not whether it could be discovered with the luxury of time and focused examination that the defendant brings to the issue.

The Alabama Supreme Court has narrowly constricted the range of cases in which a defendant may obtain summary judgment based on an open-and-obvious defense. When, as here, the plaintiff has not admitted carelessness or subjective knowledge of the condition, and when the condition is neither total darkness nor an open body of water, the evidence must "establis[h] that the danger was so extraordinarily obvious that [the] plaintiffs could not conceivably prevail on their premises-liability claims." *McClurg v. Birmingham Realty Co*., 300 So. 3d 1115, 1120 (Ala. 2020). "[T]he fact that the [riser] was of the same color and material as the surrounding [floor]" is a "facto[r] a jury could reasonably consider to reach a conclusion that the [step] was not an open and obvious danger." *Id*. (addressing potholes); *see also Pittman v. Hangout, LLC*, 293 So. 3d 937, 944 (Ala. Civ. App. 2019) (under the circumstances, a single step was not open and obvious as a matter of law even though it was painted yellow); *Woodward v. Health Care Authority*, 727 So. 2d 814, 817 (Ala. Civ. App. 1998) (even though the plaintiff testified she would not have fallen had she been looking down, whether a curb was an open and obvious condition presented a jury issue when the lighting and the color of the sidewalk, driveway and curb gave the appearance of one flat mass of concrete).

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff, a properly functioning jury could find the facts necessary to support a duty to warn.

### D. Was the Plaintiff Contributorily Negligent?

The defendant argues that the plaintiff fell "due to her own negligence." (Doc. 52 at 14). According to the defendant, it is "nonsensical" for the plaintiff to testify that she was looking where she was going and was aware of her surroundings and yet insist that she failed to see the white strips and caution signs, requiring application of "Occam's Razor" to conclude that she "fell because she was not paying attention to her surroundings." (*Id*. at 16-17 (emphasis and internal quotes omitted)). The deficiencies in the step, its surroundings, and its supposed warnings have been adequately chronicled above, and the defendant identifies no authority for its implicit assumption that an invitee is negligent unless she is constantly, completely, and inerrantly conscious of all aspects of her environment.

Viewing the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff, a properly functioning jury could find that the plaintiff was not contributorily negligent.

### E. Did the Defendant Act Wantonly?

For purposes of awarding punitive damages, wantonness is defined by statute as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). The Alabama Supreme Court has acknowledged this definition and reframed it as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Wal-Mart Stores, Inc. v. Thompson*, 726 So. 2d 651, 654 (Ala. 1998) (internal quotes omitted).

Without amplification, the defendant posits that "the undisputed evidence does not meet the requirements for wanton conduct." (Doc. 52 at 19). Rather than attempting to meet its initial burden by either identifying evidence negating wantonness (and explaining how it does so) or demonstrating the plaintiff's inability to produce evidence of wantonness at trial, the defendant argues it must receive summary judgment because the plaintiff "has failed to present any evidence supporting" such a finding. On motion

for summary judgment, the plaintiff need not do anything at all until and unless the defendant meets its initial burden. Because the defendant offers only its *ipse dixit*, it has not met its burden, and that is dispositive.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **denied**.

DONE and ORDERED this 26th day of August, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
